IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2018 Session

## IVAN MICHAEL KANSKI v. KELLY JEAN KANSKI

**Appeal from the Chancery Court for Williamson County**
**No. 44790     Joseph Woodruff, Judge**

_____

### No. M2017-01913-COA-R3-CV

_____

This case involves a contentious divorce between parties who share one minor child. After a two-day bench trial, the trial court granted the wife a divorce on the ground of inappropriate marital conduct. The husband appealed raising numerous issues related to property classification, valuation, and division. He also challenges the alimony awards and child support determination. After our review of the record, we determine that the trial court erroneously set the husband's income for the purpose of child support, and we therefore remand the case for a new determination of the husband's income and calculation of his child support obligation. We affirm the trial court's decision in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Vacated in Part, and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Mark T. Freeman, and Marissa L. Keen, Nashville, Tennessee, for the appellant, Ivan Michael Kanski.

Neil Campbell, and Marissa L. Walters, Franklin, Tennessee, for the appellee, Kelly Jean Kanski.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

Ivan Michael Kanski ("Husband") and Kelly Jean Kanski ("Wife") were married

in 2004, and together they have one child, born in 2007.[1]

Immediately prior to the marriage, the couple lived in a duplex owned by Husband in Nashville. They later purchased a home together in Williamson County but kept the duplex as rental property. For the majority of the marriage, Husband worked as a web developer, and Wife stayed home with the children. In 2013, the parties started a business together, Form Fitness, LLC, where Wife worked as a manager and, later, a fitness instructor.

In December 2015, Wife filed for divorce in the Chancery Court of Williamson County, Tennessee, citing the alternative grounds of irreconcilable differences and inappropriate marital conduct.[2] At the time the complaint for divorce was filed, Husband, who was the primary wage earner during the marriage, lost his job as a web developer. As a result, Wife filed a motion to list for sale the marital residence in Williamson County to offset the loss of Husband's income. Although Husband initially opposed the motion, the parties eventually agreed to do so.

After the sale of the marital residence was completed, the parties entered into an agreed order allowing the proceeds of the sale of the residence to be partially distributed to cover their respective living expenses and attorney's fees. Wife later received court permission to close Form Fitness, which was operating at a loss, and in January 2017, the trial court awarded Wife $2,500 per month in temporary support also to be paid from the proceeds of the sale of the marital residence.

The parties attended mediation in February 2017, which resulted in the execution of a Permanent Parenting Plan regarding custody of the couple's son. The plan established Wife as the primary residential parent and awarded Father 120 days of parenting time per year.[3]

---

[1] Wife also had primary custody of her child from a previous marriage.

[2] Wife also filed a petition seeking an order of protection against Husband. This petition was filed December 21, 2015, the day before Wife filed for divorce, in the General Sessions Court for Williamson County, Tennessee. However, by agreed order entered on January 7, 2016, the petition was transferred to chancery court and consolidated with the complaint for divorce. Therein, Wife complained of Husband's erratic behavior, threats toward Wife and the children, excessive use of alcohol while on medication for depression and anxiety, tracking Wife's location, and other paranoid behavior. Wife claimed that both she and the children feared for their safety. The ex parte order of protection was granted but later dismissed.

[3] An agreed order was entered in April 2016 allowing Husband supervised visitation once per week. A later filed agreed order allowed Husband additional parenting time.

While the divorce was pending, Wife filed several petitions for criminal contempt against Husband, alleging that Husband made inappropriate communications with her in violation of court orders, including disparaging and threatening text messages, voice messages, and emails, interfered with her operation of Form Fitness, made disparaging remarks about her to the child, and allowed insurance policies to lapse, among other things. Husband ultimately pleaded guilty to 32 counts of criminal contempt by agreed order entered on July 5, 2017.

The trial court held a two-day bench trial on Wife's complaint for divorce on July 5 and July 7, 2017, at which both parties to the divorce testified.

For Husband's part, he testified to his fault in the parties' separation and Wife's decision to file for divorce. Husband then testified at length concerning the couple's real and personal property. The majority of this testimony focused on the Nashville duplex that he purchased prior to the marriage. According to Husband, he purchased the duplex in 2001 for $113,000. He resided in one half of the duplex while leasing the other half. He testified that while Wife stayed with him for a time before the couple married, she "didn't live there as a resident and wasn't on the lease or anything." He conceded that Wife had mail sent to the duplex. She also assisted him with renovating the kitchen.

Husband testified that after they married, the couple moved into a new home that the parties had purchased together. He explained that he kept the duplex as rental property, the expenses for which were paid from the parties' joint checking account. Husband was adamant that Wife did not contribute to the upkeep and maintenance of the duplex during their marriage. However, when questioned, he agreed that Wife had occasionally helped clean the property and "helped facilitate" when the property required maintenance. Husband conceded that the duplex became marital property in 2013 when he refinanced the property and placed Wife's name on the deed. At that time, the duplex was appraised for $240,000. Husband testified that the property's value had since increased based on a 2016 appraisal for $285,000. He acknowledged that a tax appraisal of the property valued it at $318,000.

At the time of trial, Husband was once again residing in the duplex and requested that the court allow him to keep it. He explained that his mortgage payment on the duplex was $999.38 per month and that he received $1,085 per month in rent for the other half of the duplex.

With regard to the Nashville duplex, Wife testified that she assisted Husband with the rental property's upkeep, occasionally cleaning, assisting with yard work, and communicating with tenants. Wife explained that it was her understanding that the duplex had always been considered joint property by the couple, as the income derived from it allowed her to quit her job and stay home with their son.

- 3 -

The parties also testified concerning the couple's shared business, Form Fitness, which was closed while the divorce was pending. In sum, Husband admitted to interfering with Wife's operation of the business following their separation but adamantly disagreed with Wife's statements that Form Fitness was operating at a loss and needed to be shut down. According to Husband, the business was worth approximately $200,000, including the remaining fitness equipment and goodwill, and he requested that the court award him half of its value. He accused Wife of manipulating the business's finances in a way that made it appear as if it was not making money.

Concerning the Form Fitness business, Wife testified that she sought court permission to close the business after receiving professional advice to do so. She opined that the business simply could not become profitable due to a flawed business model. According to her, the business was only worth approximately $5,000, which was the value of various exercise equipment and a sound system she still possessed. She also testified that she had been informed by the building's landlord that the parties still owed $4,000 in past-due utilities. Wife testified that after she closed Form Fitness, she continued to use the building Form Fitness had rented and some of the exercise equipment to train individual clients to generate some income.

With regard to Husband's employment and income, he testified that he worked as a web developer for seven years at ICG Link, Incorporated, making $85,000 per year. Prior to the couple's separation, in September 2015, Husband was recruited and hired by American Hometown Media making $102,000 per year. However, he was terminated from his position in December 2015. After five months of unemployment, Husband obtained another job in his field for a period of five weeks in May 2016 for which he would have been paid $95,000 per year. He testified that it was an "amicable split" and it "just wasn't a good fit for the company" due to his lack of experience with a specific program.

Husband testified that although he was still seeking employment as a web developer, he then resorted to taking a job at a grocery store making $16 per hour for approximately five weeks. He was then unemployed for another four months until late October 2016. He then obtained work in March 2017, where he was employed at the time of trial, making $87,500 per year. At trial, the parties stipulated that, for child support purposes, Husband's income should be set at $87,500.

Husband adamantly claimed that his weeks and months of unemployment were not voluntary. He testified that it was "a very troubling time" for him, as he was preparing for the sale of the marital residence and was unable to see his son as frequently as he would have preferred.

As for his expenses, Husband testified that while he does have a mortgage payment on his Nashville duplex where he resides, the rental income he derives from it

covers the payment. He testified that he was required to make a minimum $750 monthly payment on his extensive credit card debt incurred during the months he was unemployed and $1,000 monthly payment on his attorney's fees. He speculated that these two monthly payments along with his child support payment would account for roughly half of his monthly income. He also testified to other various monthly expenses[4] including $300 for groceries, $50 for his cell phone, $150 for utilities, $80-100 for cable and internet, and $80 for a storage unit. He also testified to other monthly expenses for which he did not give a precise dollar amount including gasoline, car insurance, general household supplies, and prescriptions.

Wife estimated that at the time of trial she was making approximately $2,400 per month as a personal trainer. She explained that she was attempting to work only three days per week to work around her full-time college course load. According to Wife, she had enrolled as a full-time student at the time of trial seeking to further her education and obtain a psychology degree. She testified that she expected to reach an earning potential of $50,000 per year after obtaining her degree. Wife provided the court with a detailed list of her monthly expenses, and most significantly, Wife testified that she owed $1,695 per month in rent and owned approximately $53,000 in attorney's fees.

The trial court entered its Memorandum and Order on August 28, 2017, in which it granted Wife a divorce based on the ground of inappropriate marital conduct. At the outset, the trial court specifically noted Husband's lack of credibility and demeanor at trial, stating as follows:

> Based upon the testimony of the Parties and other evidence, the Court finds Husband failed to participate in discovery in a meaningful way; that he failed to provide any answers to his interrogatories and failed to produce anything other than extremely limited production to the request for production of documents sent by Wife. The Court notes many instances where Husband's testimony at deposition was irreconcilably different from his in-Court testimony and in which Husband simply refused to answer the questions. Husband's testimony in Court was thoroughly impeached and the Court could not find his testimony to be credible or helpful. Specifically, the Court finds his answers were often evasive and did not assist the trier of fact.

The court went on to divide the parties' marital property and debt. Notably, the trial court determined that the Nashville duplex had been transmuted to marital property.

---

[4] At trial, Husband attempted to introduce, for the first time, a detailed list of his expenses. Wife's attorney objected to use of the list of expenses because Husband failed to produce such information during discovery. The trial court sustained the objection and did not allow the list to be introduced because of Husband's failure to cooperate during discovery.

It accepted Wife's value of $315,000 as the value of the property and ordered Husband to have the duplex refinanced and pay Wife $118,500 as her marital share. The court valued the since-dissolved Form Fitness, LLC, at $5,000, the approximate value of the remaining fitness equipment, and awarded it to Wife. In doing so, the court rejected Husband's "seemingly arbitrary value for good will of $50,000, as well as multiplying Wife's current income as a self-employed personal trainer by five." After crediting each party with the personal property, including furniture, bank accounts, and vehicles they respectively possessed, the court found that Wife possessed 52.3% of the marital estate, which the court valued at $426,674.36. According to the court, Husband possessed the remaining 47.7% of the estate. Of the parties' substantial credit card debt, the trial court assessed $63,643.86 to Husband and to Wife $5,372.03, which included $4,000 owed for Form Fitness utilities.

With regard to custody and child support, the court adopted the parties Permanent Parenting Plan executed earlier that year and ordered husband to pay Wife child support in the amount of $1,195 per month. Despite evidence that Husband was earning $87,500 per year at the time of trial, the court set Husband's income at $100,000 per year for the purpose of child support.[5]

Finally the trial court awarded Wife rehabilitative alimony in the amount of $1,250 per month for a period of 48 months and alimony *in solido* for reasonable attorney's fees and costs in the amount of $56,611.50. Husband filed a timely notice of appeal.

## II. ISSUES PRESENTED

Husband presents the following issues for review on appeal, which we have slightly reworded:

1.   Whether the trial court erred in finding the duplex was marital property and in valuing the duplex at $315,000.

2.   Whether the trial court erred in valuing Form Fitness at $5,000 and in assessing $4,000 in business debt to Wife.

3.   Whether the trial court erred in crediting Husband with $7,000 worth of personal property

---

[5] The trial court further determined that Husband had not contributed any funds for the maintenance and support of the child during the pendency of the divorce, which totaled 20 months, and therefore, the could awarded Wife $23,900 in retroactive child support. The retroactive child support award was satisfied by distributing Wife funds from the proceeds of the sale of the marital residence.

4.    Whether the trial court erred in awarding Wife's IRA solely to Wife.

5.    Whether the trial court erroneously determined that Husband's unemployment was voluntary and erroneously determined Husband's yearly income for the purpose of calculating child support.

6.    Whether the trial court erred in awarding rehabilitative alimony and alimony *in solido* to Wife.

Wife presents the following additional issue, as restated, on appeal:

7.    Whether Wife is entitled to her attorney's fees incurred on appeal.

For the following reasons, we affirm the trial court's order as it pertains to marital property division and alimony, vacate the order as it pertains to Husband's income for child support purposes, and remand for further proceedings.

## III. ANALYSIS

This case was tried by the trial court without a jury. We therefore review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Also, because the trial court has the opportunity to observe the demeanor of the witnesses and hear the in-court testimony, we afford considerable deference to the trial court's credibility determinations and the weight given to oral testimony.[6] *Andrews v. Andrews*, 344 S.W.3d 321, 339 (Tenn. Ct. App. 2010). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hyneman v. Hyneman*, 152 S.W.3d 549, 553 (Tenn. Ct. App. 2003).

### A. Property Division & Valuation

On appeal, Husband raises several issues related to the valuation and the division of the marital estate. Property classification issues are issues of fact. *Luplow v. Luplow*, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014). "Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division." *Id.* (citing *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003)). After this valuation, the trial court is to divide the marital property in an equitable manner considering the statutory factors listed in Tennessee Code Annotated section 36-4-121(c). *Id.* at 109-110. "The equitable

---

[6] Of particular importance here, the trial court found Husband to have zero credibility, noting that his testimony was "thoroughly impeached."

division of marital property is a fact-intensive inquiry involving the careful weighing of the relevant statutory factors." *Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at *5 (Tenn. Ct. App. Nov. 30, 2016) (no perm. app. filed). The trial court has broad discretion in fashioning an equitable distribution of marital property, and an appellate court will defer to the trial court's distribution unless it is inconsistent with the statutory factors or lacks proper evidentiary support. *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013).

Husband first argues that the trial court erroneously determined that the parties' Nashville duplex, which Husband acquired prior to the marriage, had been transmuted to marital property.[7] Husband also challenges the trial court's valuation of the duplex. According to him, the trial court erred in relying on a 2017 tax appraisal of the property rather than another appraisal obtained earlier the same year and further erred in failing to specifically state its reasons for choosing one appraisal over the other.

Next, Husband takes issue with the trial court's valuation of the parties' fitness studio gym, Form Fitness, LLC, which the court permitted Wife to dissolve while the divorce proceedings were pending, at only $5,000. He also argues that the trial court erroneously assessed $4,000 of debt connected with the business to Wife in distributing the parties' debt. According to Husband, there was insufficient proof to conclude such debt existed. In addition, Husband asserts that the trial court erred by crediting him with the value of personal property, including home furnishings, that Husband claims he does not actually possess. Finally, he argues that the trial court erred by awarding Wife's retirement account solely to Wife.

Although Husband properly raised these issues concerning the parties' property and debt, he noticeably failed to include in his brief a table listing all property and debts the trial court considered. Rule 7 of the Rules of the Court of Appeals of Tennessee governs the content of briefs in domestic relations cases involving challenges to a trial court's classification and division of marital property and debt. Rule 7 provides as follows:

> **(a)** In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1)

---

[7] Husband admits that Wife is entitled to a share of the increase in the property's value between 2013 and the time of trial because, when he refinanced the property in 2013, Husband deeded an undivided interest in it to Wife. Still, he takes issue with the trial court's decision to categorize the duplex at its valuation at the time of trial as marital property, stating that "[f]rom 2013 onward the Duplex was marital property but not before."

all separate property, (2) all marital property, and (3) all separate and marital debts.

**(b)** Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

**(c)** If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

Tenn. R. Ct. App. 7. Therefore, "in all cases where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property." *Akard v. Akard*, No. E2013-00818-COA-R3CV, 2014 WL 6640294, at *4 (Tenn. Ct. App. Nov. 25, 2014).

We previously have held that "where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements." *Stock v. Stock,* No. W2005-02634-COA-R3-CV, 2006 WL 3804420, at *5, n.3 (Tenn. Ct. App. Dec. 28, 2006). This Court succinctly explained the importance of the requirements of Rule 7 in *Harden v. Harden*:

> [I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the *entire* distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010) (citations omitted).

As stated above, Husband's brief does not contain any table in compliance with

- 9 -

Rule 7. After Wife made note of the deficiency in her appellate brief, Husband did include such a table in his reply brief. "Reply briefs, however, are not vehicles to correct deficiencies in initial briefs." *Ingram v. Ingram*, No. W2017-00640-COA-R3-CV, 2018 WL 2749633, at *11 n.4 (Tenn. Ct. App. June 7, 2018) (concluding husband waived issues relating to assignment of marital debt despite his attempt to include a Rule 7 table in his reply brief). *But see Disterdick v. Disterdick*, No. E2017-00743-COA-R3-CV, 2018 WL 3026063, at *6 (Tenn. Ct. App. June 18, 2018) (determining that no waiver occurred where husband remedied the deficiency by providing a Rule 7 table in his reply brief). Because there is no right to reply to Husband's reply brief, Wife is unable to argue over perceived deficiencies or inaccuracies in Husband's table. *See Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006) (refusing to consider an argument raised in a reply brief, explaining that "'[s]uch a practice would be fundamentally unfair as the appellee may not respond to a reply brief'") (quoting *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991)). Moreover, while this Court may "suspend the requirements of Rule 7 for 'good cause,'" *Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *7 (Tenn. Ct. App. June 23, 2016) (quoting Tenn. R. Ct. App. 1(b)), we find no such cause under the facts of this case.

We, therefore, conclude that Husband has waived these issues related to the classification, valuation, and division of the marital property and debt and affirm the trial court's division as it pertains thereto.

## B. Spousal Support

Next, we consider Husband's challenges to the trial court's awards of rehabilitative alimony and alimony *in solido*. The Tennessee Supreme Court has articulated a deferential standard of review applicable to a trial court's decision on matters of alimony:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson,* 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew,* 40 S.W.3d at 470; *Robertson v. Robertson,* 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson,* 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright,* 337 S.W.3d at 176; *Henderson,* 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

Tennessee Code Annotated section 36-5-121(d)(1) outlines the four types of spousal support that are recognized under Tennessee law: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. The Tennessee General Assembly, however, has set forth a clear legislative preference for rehabilitative alimony:

It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard

of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(2).

In determining whether to award spousal support and, if so, the nature, amount, length, and manner of payment, courts must consider all relevant factors, including, to the extent that they are relevant, the statutory factors listed in Tennessee Code Annotated section 36-5-121(i).[8]  Our review of this discretionary decision involves three determinations: (1) whether the factual basis for the trial court's decision is properly supported in the record; (2) whether the trial court applied the correct legal principles; and (3) whether the trial court's decision was within the range of acceptable alternatives. *Gooding v. Gooding*, 477 S.W.3d 774, 780 (Tenn. Ct. App. 2015).  Here, the trial court awarded both rehabilitative alimony and attorney's fees, which is considered a form of

---

[8] The statutory factors include:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

alimony *in solido*.

In awarding Wife rehabilitative alimony, the trial court set forth its extensive reasoning as follows:

Husband is currently employed . . . earning an annual income of approximately $87,500.00. Prior to the filing of this case, Husband was earning . . . approximately $100,000.00 per year. Husband's tax returns for 2009, 2012, and 2013 include miscellaneous income earned by Husband from work as an independent contractor [with an] average gross income . . . [of] $7,853.33. Husband's absence from the work force during a large portion of the last twenty months was voluntary.

The Parties' fitness studio business failed, however, Wife has undertaken to generate income as a personal trainer, for which she is qualified and certified . . . .

Both parties graduated from high school. Husband has an advanced associate's degree. Husband does not need further education and training in order to be gainfully employed. He is working in his chosen profession and is capable of generating considerable income. Wife is currently a student at Columbia State Community College, studying psychology. She aspires to obtain a BS degree, then to attend graduate school to obtain a master's degree in psychology. Before the marriage, Wife was employed by HCA in its billing and revenue operations. Wife's skills in the hospital revenue field have become obsolete during the time Wife has been out of the labor force. . . . Consequently, Wife needs some amount of vocational rehabilitation in order to achieve the earning capacity she enjoyed prior to the marriage. Wife has obtained several certifications in the field of personal fitness training and is earning income from this activity.

These facts and this factor favor an award of rehabilitative alimony to Wife.

This marriage is a 13 year marriage. Husband is 41 years of age, and Wife is 39 years old. Wife is in good health. Further, there was no evidence or testimony at trial that Wife suffered from any major illness or injury. Husband takes prescription medication for anxiety and depression. Husband testified that his anxiety impaired his ability to earn an income throughout the pendency of this matter. However, the record is replete with statements from Husband through email and text message that clearly show his refusal to work during the pendency of this matter was directly related to his desire to make this case as difficult for Wife as possible.

These factors support the award of rehabilitative alimony to Wife but for no longer than necessary to achieve vocational rehabilitation.

. . . .

The Parties' standard of living prior to the divorce was made

possible by Husband's income. This lifestyle was not extravagant, but was consistent with the level of income generated by Husband. Without educational and vocational rehabilitation, Wife will not be able to obtain the standard of living established during the marriage. Wife's testimony on her earning capacity was that she is making approximately $2,400.00 per month and reasonably aspires to earn approximately $50,000.00 per year. The Court finds this testimony from Wife to be credible and accurate based upon all evidence presented at trial.

It is uncontroverted that Wife was a good spouse during this marriage, and that she made both tangible and intangible contributions to the marriage. There were several years after the Parties' child was born that the Parties agreed Wife would stay at home and be a homemaker and caregiver for the Parties' minor son. All of Wife's income, when she was employed, was contributed to the Parties' joint account during the entirety of the marriage.

It is also uncontroverted Husband functioned as the primary wage earner for the family until the Parties separation in December of 2015. Thereafter, Husband simply shut down and refused to hold employment until March of 2017. During the course of this divorce litigation, Husband failed to make any tangible contributions to this marital estate, interfered with Wife's efforts to earn income at the Parties' business, Form Fitness, and refused to provide family support. This factor also supports an award of rehabilitative alimony to Wife.

The Court finds Husband is at fault for the demise of the marriage through his inappropriate marital conduct. Nevertheless, Husband's inappropriate conduct, though sufficient for awarding a divorce to Wife, did not involve such egregious abuse or waste of marital assets to justify weighing Husband's fault as a factor in awarding alimony.

The court went on to determine that Wife was in need of an additional $1,000 in addition to her $2,400 per month salary and child support in order to be equivalent to a $50,000 per year salary. The court also found that Wife needed an additional $250 per month to offset the cost of her education.

We conclude that the trial court's award of rehabilitative alimony was reasonable and supported by the record. Although Wife possesses fitness and nutrition certifications, she had not earned a college degree at the time of trial. By agreement of the parties, she spent several years as a homemaker caring for the couple's son and had only relatively recently reentered the workforce. The trial court found $1,250 per month for 4 years to be a reasonable amount and period of time to allow Wife to obtain her degree and achieve her earning potential she enjoyed prior to becoming a homemaker. We do not determine that the trial court applied an incorrect legal standard or abused its discretion in making this award.

As noted above, the trial court also awarded Wife her attorney's fees as alimony *in solido*. The court awarded her a judgment in the amount of $56,611.50, which represented Wife's attorney's fees and costs and excluded $3,800 incurred in connection with her petitions for criminal contempt. The court explained:

> Husband has caused this matter to be unnecessarily prolonged, resulting in Wife incurring significant attorney fees and costs. The Court finds that Husband failed to comply with the orders of the court; willfully violated court orders as established by his plea of guilty to various counts of criminal contempt, and failed to cooperate in discovery. Husband was voluntarily unemployed and underemployed during this pendency of this matter, and not providing any family support to Wife and the minor child, causing the Parties to deplete the largest marital asset, the proceeds from the sale of the marital residence, essentially amounting to dissipation of the marital estate. Wife would be required to deplete the assets awarded to her from this divorce matter in order to pay her attorney fees.
> Based on the foregoing, the Court finds that Wife's request for attorney fees should be granted and that the fees incurred by Wife were both reasonable in amount and necessary with the exception of the attorney fees expended on prosecution of the Criminal Contempt Petitions .

The decision to award attorney's fees as alimony *in solido* is within the sound discretion of the trial court. *Gonsewski*, 350 S.W.3d at 113 (citations omitted). As with any alimony award, the trial court making an award of attorney's fees as alimony *in solido* should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). *Id.* Generally, an award of attorney's fees is appropriate if the spouse receiving the award demonstrates that he or she "is financially unable to procure counsel, and where the other spouse has the ability to pay." *Id.*

Based on the evidence adduced at trial, Wife's income, before support, amounts to roughly one third of Husband's income, and Husband's accounting of his monthly expenses does not lead us to determine that he will be unable to pay the $56,611.50 that Wife has incurred in attorney's fees and costs. Moreover, Husband admitted at trial to intentionally prolonging litigation of this matter and, as the trial court noted, he was deliberately uncooperative during discovery. We, therefore, also conclude that the trial court did not abuse its discretion in granting Wife her reasonable attorney's fees as alimony *in solido*.

## C. Child Support

We now turn to the trial court's calculation of child support, specifically, the issue of Husband's income.

- 15 -

The Tennessee Child Support Guidelines presume that both parents contribute to the financial support of the child in pro rata proportion to the actual income available to each parent. Tenn. Comp. R. & Regs. 1240-02-04-.03(1)(a). As such, the fairness of a child support award depends on an accurate determination of each parent's gross income or ability to support. *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). Generally, a parent's gross income will be equivalent to his or her earning capacity or ability to support. *Id.* However, certain situations may arise in which a court may "impute" income to a parent. *Id.* To "impute" income means to "assign or attribute an income level to the parent that may not reflect the parent's actual gross income." *Id.* The guidelines provide that imputing additional gross income to a parent is appropriate in three situations: if a parent is found to be willfully and/or voluntarily underemployed or unemployed; when there is no reliable evidence of income; or when the parent owns substantial non-income producing assets. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2).

Here, as we noted above, the parties stipulated at trial that Husband's income should be set at $87,500 per year, as he had been employed making this amount for several months at the time of trial. The trial court, however, set Husband's income for the purpose of calculating child support at $100,000 per year, or $8,333.33 per month.[9] The court explained:

> Prior to the filing of this divorce matter, Husband was earning an annual income of upwards of $100,000.00. Husband's tax returns for 2009, 2012, and 2013 reflect miscellaneous income earned by Husband from additional web development jobs. Husband's average gross income from said web development contract labor jobs for 2009, 2012, and 2013 was $7,853.33. Moreover, the Court has awarded Husband the Duplex, from which he will derive rental income.

It is unclear from the trial court's order precisely how it arrived at the $12,500 figure that it imputed to Husband in addition to his $87,500 yearly salary. There was no evidence at trial that Husband still had contract labor jobs available to him, and although there was testimony concerning the amount of rental income that the duplex was capable of producing, Husband testified that he was personally living in the duplex at the time of trial and was only receiving rent for the other half. Regardless, the trial court expressly found that Husband was voluntarily unemployed and underemployed while the divorce was pending; however, at the time of trial, the parties were seemingly in agreement, based on their stipulation regarding Husband's income, that this was no longer the case.

---

[9] The court set Wife's income for the purpose of calculating child support at $2,441.67 per month based on her testimony at trial; however, Wife's income is not disputed on appeal.

Husband had secured employment making a comparable salary to the one he had enjoyed during the majority of the parties' marriage.

Because the record does not support a finding that Husband was voluntarily underemployed at the time of trial and because the trial court did not adequately support its decision to impute additional income to Husband, we vacate the trial court's child support award and remand for further proceedings on this issue.

### D. Wife's Attorney Fees on Appeal

Finally, Wife has requested that this Court award her attorney's fees on appeal. The determination of whether to award attorney's fees on appeal is within the sole discretion of the appellate court. *Moses v. Moses*, E2008-00257-COA-R3-CV, 2009 WL 838105, at *10 (Tenn. Ct. App. Mar. 31, 2009) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). Given our decision on appeal, we respectfully decline to do so.

### IV. CONCLUSION

For the aforementioned reasons, the portion of the trial court's order regarding imputation of income and child support is vacated and remanded for further proceedings, but the decision of the chancery court is otherwise affirmed. Wife's request for attorney's fees on appeal is denied. Costs of this appeal are taxed equally to the appellant, Ivan Michael Kanski, and to the appellee, Kelly Jean Kanski, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE